[No. A066912. First Dist., Div. One. Apr. 19, 1995.]

SOUTHEASTERN EXPRESS SYSTEMS et al., Plaintiffs and Appellants,
v.
SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA,
Defendant and Respondent.

2

**COUNSEL**

Malcolm A. Misuraca, Marlis McAllister and Douglas V. Bartman for Plaintiffs and Appellants.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Michael J. Ioannou and Stacey L. Pratt for Defendant and Respondent.

**OPINION**

**STRANKMAN, P. J.**—A general partnership and its individual general partners, residents of Georgia, sued their insurance company for breach of contract and bad faith insurance practices for refusing to defend a federal

case brought in California. The insurance company, a Georgia corporation, obtained an order quashing service of process for lack of jurisdiction. We reverse the order, holding that an insurance company providing commercial liability insurance to an interstate business covering injuries arising from offenses committed in California has purposefully established minimum contacts with the state and may fairly be subjected to litigation in California when denying a duty to defend alleged losses arising here.

### STATEMENT OF FACTS

Respondent Southern Guaranty Insurance Company of Georgia is a corporation organized under the laws of Georgia and maintains its principal place of business in Georgia. Respondent has no physical presence in California—neither offices, property, nor bank accounts. Respondent has never been authorized to do business in California, has never filed a California income tax return, and has no agent for service of process here. Appellants are Southeastern Express Systems, a general partnership organized under the laws of Georgia, and its general partners, George Barnes, Kevin Clark, and Gerry Wambolt, all Georgia residents. Southeastern Express Systems sells and services computers and related equipment manufactured by Triad Systems Corporation (Triad) which are used in the management of automotive parts outlets. Southeastern Express Systems services computers in many states, including California.

In April 1992, appellants were sued by Triad in the United States District Court for the Northern District of California. Triad, based in Livermore, California, invoked the federal court's original and diversity jurisdiction over appellants in prosecuting copyright infringement and other claims. Among other allegations, Triad avers that appellants have infringed its computer software copyrights by making and using illegal copies of its software and manuals.

Appellants tendered to respondent the defense and coverage of the Triad action. Respondent insured appellants under general commercial liability policies which appellants claimed covered Triad's copyright infringement action as an advertising injury.[1] The insurance policies cover advertising injuries for offenses committed in the "coverage territory," defined as "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada." Respondent says it undertook an investigation to determine if coverage existed, although it is not clear what this investigation

---

[1] The policies were issued to George Barnes doing business as Southeastern Brokerage Co. and Southeastern Express Systems, Inc., the apparent predecessors to Southeastern Express Systems.

entailed. Appellants say the investigation consisted of respondent contacting their California counsel in the Triad case and being furnished documents from that case.

Respondent refused to pay appellants' costs of defense and appellants brought this action for breach of contract and bad faith insurance practices in May 1994. Three weeks later, respondent countered by filing its own complaint in Georgia for declaratory relief. Soon after filing the Georgia action, respondent moved to quash service of process in this action, claiming lack of personal jurisdiction. The motion was granted.

## DISCUSSION

 The issue on appeal is narrow, but important: is an insurer providing nationwide commercial liability coverage subject to personal jurisdiction in California in an action brought by its insureds alleging a wrongful refusal to defend losses arising in California?

 California courts may exercise personal jurisdiction over nonresidents to the full extent permitted by the United States and California Constitutions. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264]; Code Civ. Proc., § 410.10.) The constitutional guarantee of due process requires that a nonresident subjected to a state's personal jurisdiction have "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057], quoting *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357].) The relationship among the nonresident defendant, the forum state, and the litigation is the "essential foundation" of personal jurisdiction when a controversy is related to or arises out of a defendant's contacts with the forum.[2] (*Helicopteros Nacionales de Colombia* v. *Hall, supra*, 466 U.S. at p. 414 [80 L.Ed.2d at pp. 410-411].) The defendant's "conduct and connection" with the forum state must be such that "he should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 297 [62 L.Ed.2d 490, 501, 100 S.Ct. 559].) A

[2] A state's exercise of personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum is called "specific jurisdiction," in counterpoint to "general jurisdiction" where the suit does not arise out of or relate to the defendant's forum contacts but is asserted because the defendant's forum contacts reflect continuous and systematic business conduct. (*Helicopteros Nacionales de Colombia* v. *Hall* (1984) 466 U.S. 408, 414-416 [80 L.Ed.2d 404, 410-412, 104 S.Ct. 1868].) We are concerned with "specific jurisdiction" here.

nonresident corporation has notice that it is subject to out-of-state litigation if it " 'purposefully avails itself of the privilege of conducting activities within the forum State.' " (*Ibid.*, quoting *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297-1298, 78 S.Ct. 1228].)

"Purposeful availment" means "an action of the defendant purposefully directed toward the forum State." (*Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 112 [94 L.Ed.2d 92, 104, 107 S.Ct. 1026], italics omitted.) But "purposeful availment" may be established even if the nonresident defendant maintains no offices, property, or employees in the forum. "[I]f a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's *in personam* jurisdiction even if it has no physical presence in the State." (*Quill Corp.* v. *North Dakota* (1992) 504 U.S. 298, 307 [119 L.Ed.2d 91, 103, 112 S.Ct. 1904, 1910-1911], citing *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 476 [85 L.Ed.2d 528, 543, 105 S.Ct. 2174].) A nonresident defendant who has purposefully directed its activities toward the forum state may not defeat personal jurisdiction absent compelling evidence that jurisdiction would be unreasonable. (*Burger King Corp.* v. *Rudzewicz, supra*, 471 U.S. at p. 477 [85 L.Ed.2d at pp. 543-544]; see *Asahi Metal Industry Co.* v. *Superior Court, supra*, 480 U.S. at p. 113 [94 L.Ed.2d at p. 105] [listing factors relevant to reasonableness determination].) ▋ Where a contract between plaintiff and the nonresident defendant is claimed to constitute the necessary "minimum contacts," the exercise of personal jurisdiction is not dictated by the place of contracting or performance, but is guided by a realistic approach which considers the contractual relationship in its totality, including the terms of the contract and the contemplated future consequences of the obligations assumed. (*Burger King Corp.* v. *Rudzewicz, supra*, 471 U.S. at pp. 478-479 [85 L.Ed.2d at pp. 544-545].)

▋ Here, respondent wrote an insurance contract obligating it to defend and indemnify advertising injuries for offenses committed by appellants in the "coverage territory," defined as "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada." Respondent sold its policy as one providing nationwide coverage and collected insurance premiums calculated upon that broad coverage, thus deriving benefit from the economic market of all states in which appellants faced potential business liability, including California. Also, respondent agreed to defend appellants against lawsuits in California, and thus should reasonably have anticipated being called into our courts.

We believe it neither unreasonable nor unfair to require an insurer who has assumed the responsibility of defending its insured in California to

defend itself when it refuses its insured's defense in a suit brought in California. We recognize that an insurer's defense of a bad faith action may necessitate inconveniences exceeding those attending the defense of an insured, since evidence and witnesses from the insurer's home office may have to be produced in a distant forum to refute the plaintiff's allegation of unfair claims handling practices. But a nonresident defendant's inconvenience rarely achieves constitutional magnitude, and fails to do so here. (*Burger King Corp.* v. *Rudzewicz, supra,* 471 U.S. at pp. 477, 483-484 [85 L.Ed.2d at pp. 547-549].) Considerations of convenience may usually be accommodated through a forum non conveniens dismissal or stay.[3] (*Ibid.;* Code Civ. Proc., § 410.30; see *Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744 [1 Cal.Rptr.2d 556, 819 P.2d 14] [discussing forum non conveniens standards].)

Moreover, once "minimum contacts" have been established, the interests of the plaintiff and the forum often justify even serious burdens imposed upon a nonresident defendant subjected to personal jurisdiction. (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. at p. 114 [94 L.Ed.2d at pp. 105-106].) Appellants claim California is a convenient forum because they have counsel here familiar with the underlying suit they are defending and will be able to subpoena Triad officers to establish that the underlying action presents claims within appellants' insurance coverage. We note, however, that appellants are not California residents—a fact which diminishes both their interest in a California forum and California's interest in the controversy. (Cf. *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199] [finding state interest in providing redress for residents when insurers refuse claims].)

Nevertheless, California has a significant interest in assuring that injuries and losses suffered in the state are afforded insurance coverage. (*Watson* v. *Employers Liability Corp.* (1954) 348 U.S. 66, 72 [99 L.Ed. 74, 81-82, 75 S.Ct. 166].) California's interests in encouraging fair claims handling practices and holding insurers answerable for bad faith practices are also significant, and would be compromised were we to deny personal jurisdiction over nonresident insurers in bad faith actions alleging wrongful refusal to defend California losses. Also weighing in our determination of whether an exercise of personal jurisdiction would offend " 'traditional notions of fair play and substantial justice' " is " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the

---

[3]The trial court ruled respondent's motion to dismiss for forum non conveniens moot since it granted its motion to quash service of process. On remand, the court may consider whether this action would be more appropriately and justly tried in Georgia.

several States in furthering fundamental substantive social policies.' " (*Asahi Metal Industry Co.* v. *Superior Court, supra*, 480 U.S. at p. 113 [94 L.Ed.2d at p. 105].) There may be no greater efficiency in resolving this bad faith insurance action in California, where the losses allegedly arose, rather than Georgia, where the appellants and respondent reside, although this record fails to demonstrate that the efficiency is markedly less. However, we believe the states' shared interest in full and fair indemnification and defense of insured losses would be hindered were we to categorically deny an insured a local forum to dispute its insurer's refusal to defend an action pending in the state.

No California court has addressed the specific issue we face here, although our decision is guided by the reasoning of earlier cases. Respondent relies heavily upon *Great-West Life Assurance Co.* v. *Guarantee Co. of North America* (1988) 205 Cal.App.3d 199 [252 Cal.Rptr. 363], in which a Canadian insurance company was found to be beyond California's jurisdiction. The insurer had issued a "blanket bond" insuring losses arising out of occurrences in Canada and the United States. (*Id.* at pp. 202-203.) Its insured, itself a Canadian insurance company, claimed losses from a California employee's fraud. (*Id.* at p. 203.) Important to the court's consideration in affirming an order quashing service of summons upon the insurer was that the insurer was not obligated to defend the insured on any claims, only to indemnify it for losses covered by the bond. (*Id.* at p. 207.) The court contrasted the case from one in which an insurer obligates itself to defend its insured in the forum (*ibid.*), which is the situation presented here, and which is the situation presented in the more closely analogous case of *McClanahan* v. *Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 [307 P.2d 1023].

In *McClanahan*, personal jurisdiction was asserted over an Alabama auto liability insurer in an action brought by judgment creditors injured in a California automobile collision with the insured. (*McClanahan* v. *Trans-America Ins. Co., supra*, 149 Cal.App.2d at pp. 171-172.) Neither the insurer, insured, nor the judgment creditors were California residents, but the accident occurred here and a judgment for personal injuries and damages had been recovered here against the insured. (*Ibid.*) The court reversed an order quashing service of process upon the insurer sued by the injured motorists to enforce the judgment. (*Id.* at pp. 171, 174.) The court noted that "the very nature" of the insurer's business contemplated appearances in California courts since the insurer indemnified losses arising out of automobile accidents occurring anywhere in the continental United States and obligated itself, under its policy, to investigate, defend and indemnify losses in California and other states. (*Id.* at pp. 173-174.)

Respondent argues that *McClanahan* is an "extreme exercise of jurisdiction" and says its holding should be confined to automobile liability insurers, given the uniquely mobile nature of the insured subject matter which makes appearances in foreign courts foreseeable. *McClanahan* is not "extreme." A majority of courts have similarly concluded that a nonresident automobile liability insurer is subject to personal jurisdiction in a third party's suit in a state in which a covered loss is alleged to have occurred. (*Payne* v. *Motorists' Mut. Ins. Companies* (6th Cir. 1993) 4 F.3d 452; *Farmers Ins. Ex.* v. *Portage La Prairie Mut. Ins. Co.* (9th Cir. 1990) 907 F.2d 911, 913-915; *Rossman* v. *State Farm Mut. Auto. Ins. Co.* (4th Cir. 1987) 832 F.2d 282, 284-287; *Fukaya* v. *Velho* (D.Guam 1976) 416 F.Supp. 785; *Pugh* v. *Oklahoma Farm Bureau Mutual Insurance Co.* (E.D.La. 1958) 159 F.Supp. 155, 157-159; *Payne* v. *Mutual Fire and Auto. Ins. Co.* (Minn.Ct.App. 1986) 381 N.W.2d 523; *N.J. Auto. Ins.* v. *Indep. Fire Ins.* (1991) 253 N.J.Super. 75 [600 A.2d 1243, 1245-1247]; *Labruzzo* v. *State Wide Insurance Company* (1974) 77 Misc.2d 455 [353 N.Y.S.2d 98, 100-104]; *Parker* v. *Fireman's Ins. Co. of Newark* (1988) 297 S.C. 166 [375 S.E.2d 325]; see *Bahn* v. *Chicago Motor Club* (1993) 98 Md.App. 559 [634 A.2d 63, 70] [collecting cases adopting the "majority rule"].)

Contrary to the position advocated by respondent, many courts have not confined the extension of personal jurisdiction over foreign insurance companies insuring losses arising in the forum to automobile liability insurers. In *American & Foreign Ins. Ass'n* v. *Commercial Ins.* (1st Cir. 1978) 575 F.2d 980, 981-982, Colombian product liability insurers were found liable to jurisdiction in a third party's Puerto Rico suit alleging that the insured Colombian bottle manufacturer produced a defective bottle which exploded in Puerto Rico. The First Circuit held that the insurers "purposely availed" themselves of the privilege of conducting activities within Puerto Rico by covering the product liability risk arising from the insured's exported bottles. (*Ibid.*) Similarly, a foreign indemnity association insuring an internationally operated ship was subjected to personal jurisdiction in Texas upon a third party's lien and claim for materials, supplies, and work provided in Texas for the vessel. (*Magnus Maritec Intern., Inc.* v. *SS St. Panteleimon* (S.D.Tex. 1978) 444 F.Supp. 567, 568.) We believe respondent's proposed distinction between automobile liability insurers and commercial liability insurers fails. Both insurers of rambling automobiles and insurers of interstate businesses should reasonably anticipate being called into foreign forums. Respondent's claim that automobiles are "uniquely" mobile overlooks the mobility of services and goods which today cross state lines with the ease of automobiles, and in greater numbers.

We do note a distinction between first party actions and third party actions which some courts have found significant, although respondent seems unaware of it. In *Bahn* v. *Chicago Motor Club, supra,* 634 A.2d at page 70, the

Maryland Court of Appeal recognized the majority rule that a nonresident automobile insurer providing nationwide coverage is liable to suit by a third party in the state in which the insured was involved in an automobile accident injuring the third party. (*Id.* at p. 70.) However, *Bahn* held that rule inapplicable to first party actions in which the insured sues its own insurer. (*Id.* at pp. 70-71.) *Bahn*, and other courts, have reasoned that an insurer's agreement to defend and indemnify its insured in any state does not imply an agreement to allow its insured to bring suit against it in any state, and have also contrasted third party suits sounding in tort from first party suits on the insurance contract. (*Ibid.*; *Batton* v. *Tennessee Farmers Mut. Ins. Co.* (1987) 153 Ariz. 268 [736 P.2d 2, 6-7]; *Hall* v. *Scott* (La.Ct.App. 1982) 416 So.2d 223, 229-230.) While *Bahn* says courts have unanimously refused jurisdiction over nonresident insurers in first party actions (634 A.2d at p. 71), it simply is not·so. (E.g., *Eli Lilly and Co.* v. *Home Ins. Co.* (D.C. Cir. 1986) 794 F.2d 710, 720-721 [254 App.D.C. 1], cert. den. (1987) 479 U.S. 1060 [93 L.Ed.2d 990, 107 S.Ct. 940]; *Szalay* v. *Handcock* (1991) 307 Ark. 232 [819 S.W.2d 684]; *Klein* v. *Allstate Ins. Co.* (1991) 202 Ga.App. 188 [413 S.E.2d 777], affd. on other grounds *sub nom. Allstate Ins. Co.* v. *Klein* (1992) 262 Ga. 599 [422 S.E.2d 863].)

We are not persuaded that a constitutionally significant distinction exists between first party and third party actions against a nonresident insurer providing nationwide coverage. To ask, as *Bahn* does, whether an insurer agreeing to defend and indemnify its insured in any state has impliedly agreed to defend itself against an insured's suit in any state only confuses the relevant question. (*Bahn* v. *Chicago Motor Club*, *supra*, 634 A.2d at pp. 70-71.) The day of founding state jurisdiction upon an implied consent theory is long past. Nor do we think it helpful to contrast third party actions for tort damages with first party actions upon the contract, since that analysis imports inappropriate formalistic concerns. Rather, the important question is whether the nonresident· defendant has "purposefully availed" itself of the benefits of an economic market in the forum state. (*World-Wide Volkswagen Corp.* v. *Woodson*, *supra*, 444 U.S. at p. 297 [62 L.Ed.2d at pp. 501-502].) The contractual relationship created by the insurance policy must be judged in its totality. (*Burger King Corp.* v. *Rudzewicz*, *supra*, 471 U.S. at pp. 478-479 [85 L.Ed.2d at pp. 544-545].) Under these principles, we do not believe the proper exercise of a state's jurisdiction over a nonresident insurer turns upon whether it is sued by a third party suffering damages from the acts of its insured in the forum, or sued by the insured itself for those losses.

*Eli Lilly and Co.* v. *Home Ins. Co.*, *supra*, 794 F.2d 710, is instructive. In that case, a drug manufacturer sued several of its product liability insurers

for a declaration of its coverage for DES (diethylstilbestrol) injury claims. (*Id.* at pp. 712-713.) In asserting personal jurisdiction over the nonresident insurers, the court found it foreseeable that the insurers would be called into a foreign forum, given the nationwide distribution of the insured's products which the insurers were charged with knowing about. (*Id.* at pp. 720-721.) Suit by the insured was itself foreseeable since the insured was likely to implead its insurers if a dispute arose over their duty to defend or indemnify. (*Id.* at p. 720.) The court noted that an insurer derives economic benefit from providing broad-based coverage, and accordingly assumes broader obligations reaching into foreign states: "In determining the scope of the risk they have insured, insurers must consider the scale on which its insured has distributed a potentially dangerous product. The broader the distribution the greater the risk—and presumably the higher the premium. Thus insurers cannot be said to have failed to avail themselves, in a conscious and deliberate manner, of the benefits of doing business in those fora in which the insured manufacturer distributes its products." (*Id.* at p. 721.)

Respondent contracted to defend and indemnify claims for advertising injuries arising from its insureds' offenses committed in any state, including California. The insureds operate an interstate business with significant activities here, and have been sued for those activities which are alleged to have created losses here. Under these circumstances, respondent may not avoid our courts' jurisdiction. "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." (*Burger King Corp.* v. *Rudzewicz, supra,* 471 U.S. at p. 474 [85 L.Ed.2d at p. 541].)

### DISPOSITION

The order granting respondent's motion to quash service of process is reversed. On remand, the trial court may consider respondent's alternative motion for dismissal on forum non conveniens grounds. Appellants shall recover their costs on appeal.

Newsom, J., and Stein, J., concurred.

A petition for a rehearing was denied May 18, 1995, and respondent's petition for review by the Supreme Court was denied July 20, 1995. George, J., was of the opinion that the petition should be granted.